IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| MIRIAM DRAIMAN | ) | Case No. 05 B 20535 |
| Debtor. | ) | |
| | ) | |
| | ) | Judge Carol A. Doyle |
| MULTIUT CORPORATION, | ) | |
| an Illinois corporation, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adversary No. 05 A 01783 |
| | ) | |
| MIRIAM DRAIMAN, | ) | |
| Defendant. | ) | |
| | ) | |
| NACHSHON DRAIMAN, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adversary No. 05 A 01784 |
| | ) | |
| MIRIAM DRAIMAN, | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

Multiut Corporation ("Multiut") and Nachshon Draiman ("Nachshon") moved for summary judgment on their adversary complaints (Nos. 05-1783 and 05-1784) against debtor, Miriam Draiman ("Miriam"). Multiut seeks a determination that certain debts of Miriam and various corporations she owned are nondischargeable under 11 U.S.C. § 523(a)(2), (4) and (6). There is a long history of litigation between Multiut and Miriam, her husband Yehuda Draiman ("Yehuda"), and various corporations owned or used by Miriam and Yehuda. Three judgments have been entered against Miriam, Yehuda, and these corporations, one in a state court

proceeding and two in separate involuntary bankruptcy proceedings filed against Multiut and Nachshon, Yehuda's brother.

Multiut seeks summary judgment on the dischargeability counts (Counts I through V) of its adversary complaint based primarily on principles of res judicata and collateral estoppel. Nachshon also seeks summary judgment on the dischargeability count (Count I) of its complaint. For the reasons discussed below, Multiut is entitled to judgment as a matter of law that the $1,252,046 state court judgment against Miriam is nondischargeable pursuant to § 523(a)(6) under the doctrine of collateral estoppel because the state court made final determinations of factual issues that are dispositive of this claim. However, Multiut and Nachshon have not demonstrated that they are entitled to summary judgment holding Miriam personally liable for the judgment entered against Miriam's corporations in the involuntary bankruptcy proceedings. Therefore, Multiut's motion is granted in part and denied in part, and Nachshon's motion is denied.

## I.    Background and Facts

This action is one battle in a long and bitter war between two brothers, Yehuda Draiman and Nachshon Draiman. Nachshon owns Multiut, a company founded in the 1980's after the deregulation of the energy industry. Multiut negotiates contracts with gas and electricity suppliers and provides gas and electrical auditing and consulting services to its customers. In 1989, Miriam became an "Independent Multiut Associate" ("IMA") for Multiut and received commissions through M. Draiman Corporation, a company wholly owned by Miriam. Yehuda also began working for Multiut in 1989 and became an IMA. In 2000, the relationship between

the brothers broke down when Nachshon learned that Yehuda had told many Multiut customers that companies formed by Yehuda and Miriam were affiliated with Multiut and that Yehuda was in effect stealing customers and even diverting payments due to Multiut to a newly renamed corporation owned by Miriam, Multiut Electric.

In 2001, Multiut filed suit in the Circuit Court of Cook County against Yehuda and the five companies used by Yehuda: U.S. Gas & Energy Corp. ("USG&E"), U.S. Utilities Corporation ("Utilities"), U.S. Gas, Electric and Telecommunications, Inc. ("USGET"), M. Draiman Corporation ("MDC"), and Multiut Electric, Inc. ("Multiut Electric"). Miriam was the sole shareholder of USG&E, USGET, MDC, and Multiut Electric. Multiut later amended the complaint to add Miriam as a defendant. On January 17, 2003, after a long bench trial, the state court entered judgment against Yehuda, Miriam, and the corporations on various counts, including breach of fiduciary duty, breach of contract, violation of the Uniform Deceptive Trade Practices Act, and tortious interference with prospective business relationships. The court also found Miriam liable for conspiring with Yehuda to breach his fiduciary duty to and employment contract with Multiut. The court entered judgment against Miriam for $250,000 in compensatory damages and later for $1,002,046 in attorneys fees (collectively the "State Court Judgment"). The Illinois Appellate Court affirmed the State Court Judgment, and the Illinois Supreme Court denied Yehuda and Miriam's petition for leave to appeal the Appellate Court's decision.

Yehuda launched a new offensive against Nachshon in March 2004, when he and two of Miriam's corporations (MDC and USG&E) filed involuntary petitions for relief under Chapter 7 of the Bankruptcy Code against Multiut and Nachshon. The cases were dismissed almost

3

immediately. The Bankruptcy Court awarded $400,000 in compensatory damages, $25,000 in attorneys' fees, and $450,000 in punitive damages against Yehuda and the two corporations in Multiut's case (the "Multiut Involuntary Judgment"). The Bankruptcy Court also awarded $25,000 in attorneys' fees and another $450,000 in punitive damages against Yehuda and the two corporations in Nachshon's case (the "Nachshon Involuntary Judgment").

Miriam filed this Chapter 7 bankruptcy case on May 23, 2005.[1] Multiut and Nachshon filed separate adversary proceedings against her. Multiut's adversary proceeding seeks a determination that the State Court Judgment and the Multiut Involuntary Judgment are nondischargeable debts pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). Multiut also filed an objection to Miriam's discharge pursuant to 11 U.S.C. § 727. Multiut's motion requests summary judgment only with respect to Counts I through V regarding the dischargeability under § 523 of the State Court Judgment and Multiut Involuntary Judgment. Likewise, Nachshon's adversary proceeding seeks a determination that the Nachshon Involuntary Judgment is a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(6). Nachshon also filed an objection to Miriam's discharge pursuant to 11 U.S.C. § 727. Nachshon's motion requests summary judgment only with respect to Count I regarding the dischargeability of the Nachshon Involuntary Judgment.

In Count I, Multiut alleges that the State Court Judgment is nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code as a debt incurred as a result of false pretenses, false representations, or actual fraud. Count II asks the court to pierce the corporate veil with respect

---

[1] This is Miriam's third bankruptcy case. She filed a case joint case with Yehuda in 2003, which was dismissed with a 180-day bar to refiling, and she filed an individual case in 2004 that was also dismissed.

4

to the State Court Judgment entered against three corporations owned by Miriam (USG&E, USGET and MDC), and to find these debts nondischargeable with respect to Miriam under § 523(a)(2)(A). Count III alleges that the State Court Judgment against Miriam is nondischargeable under § 523(a)(4) because Miriam conspired with Yehuda to embezzle from Multiut. Count IV alleges that the State Court Judgment is nondischargeable under § 523(a)(6) because Miriam and Yehuda caused willful and malicious injury to Multiut. Finally, in Count V, Multiut seeks to pierce the corporate veil against Miriam and hold her personally liable for the Multiut Involuntary Judgment. Miriam owned the two corporate petitioning creditors and authorized Yehuda to include them on the involuntary petition. Multiut asserts that the Multiut Involuntary Judgment is nondischargeable under § 523(a)(6) as a debt that arose from the willful and malicious injury caused by the involuntary petition. Similarly, in Count 1 of Nachshon's adversary proceeding, he asserts that the Nachshon Involuntary Judgment is nondischargeable under § 523(a)(6).

## II.    Res Judicata and Collateral Estoppel

Multiut and Nachshon argue that principles of res judicata and collateral estoppel render the State Court Judgment and their respective Involuntary Judgments nondischargeable as a matter of law. They contend that the state court and the bankruptcy court have already made binding determinations of all the factual and legal issues raised in the dischargeability counts.

Res judicata is sometimes used loosely to include the doctrines of res judicata and collateral estoppel. Both doctrines prevent parties from relitigating factual and legal issues that have previously been litigated. Both require a prior final judgment on the merits. Both require

identical parties or a close relationship between parties in the prior case and the current case. However, the scope of the bar against relitigation differs. Res judicata, used in its strict sense, bars *all causes of action* that a prior court decided, merging them into the judgment and foreclosing further dispute. See Rivet v. Regions Bank, 522 U.S. 470, 474 (1998); Smith Trust & Sav. Bank v. Young, 312 Ill. App. 3d 853, 855 (2000). It is often referred to as "claim preclusion," because it bars relitigation of entire causes of action or claims, as opposed to individual legal or factual issues. It also bars causes of action not decided if the parties should have raised the claims in the prior lawsuit. Rivens, 522 U.S. at 474. "[T]he claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24 (1982).

Res judicata generally does not apply to dischargeability actions under § 523 of the Bankruptcy Code. Brown v. Felsen, 442 U.S. 127, 138 (1979). Section 523 sets forth many bases for finding debts nondischargeable, each with its own elements of proof. Schwager v. Fallas (In re Schwager), 121 F.3d 177, 187 (5th Cir. 1997). The issue of dischargeability does not arise until a debtor files for bankruptcy, so no dischargeability "claim" could have been adjudicated or extinguished in a previous lawsuit in which judgment was entered before the debtor filed her petition. In this case, the State Court Judgment and the Involuntary Judgments were entered against Miriam and the other defendants before she filed her petition in this case. The dischargeability claims did not exist when the judgments were entered, so they could not have been resolved by the previous courts. Therefore, res judicata does not provide a basis for granting summary judgment against Miriam.

Unlike res judicata, collateral estoppel often applies in § 523 actions. Grogan v. Garner, 498 U.S. 279, 285 (1991). Collateral estoppel, or issue preclusion, "refers to the effect of a judgment in foreclosing litigation in a subsequent action of an issue of law or fact that has been actually litigated and decided." Meyer v. Rigdon, 36 F.3d 1375, 1378 n.1 (7th Cir. 1994). Although bankruptcy courts often have exclusive jurisdiction to determine the dischargeability of debts, parties may not relitigate factual or legal issues resolved in an earlier litigation that were necessary to the judgment entered. Collateral estoppel forecloses relitigation of legal and factual issues even if they arise in a new legal claim in the second case. "The whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." Parkland Hosiery Co. v. Shore, 439 U.S. 322, 336 n.23 (1979). Therefore, when a previous judgment against a debtor resolved a specific factual or legal issue that is later raised in a dischargeability action under § 523, collateral estoppel may apply to bar relitigation of that issue. Grogan, 498 U.S. at 289–91; Montana v. United States, 440 U.S. 147, 153 (1979). Federal courts give collateral estoppel effect to state judgments based on the collateral estoppel rules that apply in the state court that entered the judgment. 28 U.S.C. § 1738; A.D. Broker v. Mercer, 305 F.3d 660, 669 (7th Cir. 2002).

Under Illinois law, collateral estoppel applies when four requirements are satisfied:

(1) the issue decided in the prior litigation was identical to the current one;
(2) there was a final judgment on the merits;
(3) the party against whom estoppel is asserted was a party to the prior action or in privity with it; and
(4) the factual issue at stake has actually and necessarily been litigated and determined in the prior action.

LaSalle Bank Nat'l Ass'n v. Vill. of Bull Valley, 355 Ill. App. 3d 629, 635 (2005). Courts applying collateral estoppel must carefully review the prior judgment to determine whether the

7

factual or legal issue at issue in the later proceeding was in dispute and finally resolved in the earlier proceeding.

### III.   Summary Judgment Standards

Multiut's motion for summary judgment asserts that the courts entering the State Court Judgment and the Multiut Involuntary Judgment have already decided all the issues relevant to each of their dischargeability actions in Counts I through V. Nachshon's motion makes the same argument with respect to the Nachshon Involuntary Judgment. Both parties contend that, under the doctrine of collateral estoppel, Miriam may not relitigate these issues and that they are entitled to judgment as a matter of law based on the findings in the previous cases. Miriam's responses to the motions say essentially that she contests the findings made by the previous courts, and that she should be allowed to take discovery to prove that the state court's findings were not correct.

On a motion for summary judgment, the moving party "has the burden of showing the absence of a genuine issue of material fact." Pommier v. Peoples Bank Marycrest, 967 F.2d 1115, 1118 (7th Cir. 1992). The court should not weigh evidence, make credibility determinations, or attempt to determine the truth of the matter. Instead, the court must "determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990). The court may consider "any material that would be admissible or usable at trial." Woods v. City of Chi., 224 F.3d 979, 987–88 (7th Cir. 2000). The court views the facts in a light most favorable to the nonmoving party and allows that party the benefit of all reasonable inferences. Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1057 (7th Cir. 2000).

When a party seeks summary judgment based on the doctrine of collateral estoppel, the nonmoving party may not defeat the motion simply by establishing that it has evidence that conflicts with the factual conclusions of the trier of fact in the previous case. Even if the nonmoving party produces evidence that contradicts a prior judgment, collateral estoppel bars the party from relitigating facts decided in the previous case. Prochotsky v. Baker & McKenzie, 966 F.2d 333, 334 (7th Cir. 1992); Boim v. Quranic Literary Inst., 340 F. Supp. 2d 885, 900 (N.D. Ill. 2004). The moving party bears the burden to show that collateral estoppel applies in the first instance. The nonmoving party may oppose the motion by arguing that the moving party has not met all elements of collateral estoppel. But if collateral estoppel does apply, it forecloses litigation of issues that the prior court actually and necessarily decided. Havoco v. Freeman, Atkins & Coleman, Ltd., 58 F.3d 303, 307–08 (1995).

### IV.    Count IV: § 523(a)(6) Willful and Malicious Injury—State Court Judgment

In Count IV of the complaint, Multiut alleges that the State Court Judgment against Miriam is nondischargeable under § 523(a)(6). It contends that the state court actually and necessarily decided that Miriam willfully and actively participated in a conspiracy to intentionally misappropriate Multiut receivables and usurp the business of Multiut to Miriam's corporations. It further alleges that these willful and malicious acts were committed by Miriam as part of the "scheme of identities" perpetrated by her and Yehuda to injure Multiut.

In its motion for summary judgment, Multiut argues that the State Court Judgment resolved all the issues relevant to its § 523(a)(6) count. Section 523(a)(6) provides that a debt is not dischargeable if it involved (1) willful and malicious injury, (2) by the debtor, (3) to the property of another entity. 11 U.S.C. § 523(a)(6) (2000 & Supp. IV 2005). For collateral estoppel to apply, the court must conclude that (1) the state court case involved the same parties or their privies, (2) there was a final judgment on the merits, (3) the same issues were presented to the state court, and (4) the state court actually and necessarily decided the issues. Here, there is no question regarding the first two elements. First, the state court litigation involved the same parties or their privies. Miriam was a defendant in the state court litigation and participated in the trial. Further, as sole officer and shareholder of the corporations named in other counts, she was a privy of the four corporate defendants she owned. Sanders Confectionery Prods., Inc. v. Heller Fin., Inc., 973 F.2d 474, 480 (6th Cir. 1992). Second, the state court entered a final judgment on the merits after trial, which was affirmed on appeal. The court must therefore examine the state court proceedings to determine whether the state court actually and necessarily decided each element of Multiut's § 523(a)(6) claim.

### A. Willful and Malicious Injury

The first element of § 523(a)(6) is that the debt must arise from a willful and malicious injury. Kawaahau v. Geiger, 523 U.S. 57, 61-62 (1998). To prove that an injury was willful for purposes of § 523(a)(6), the plaintiff must show that the defendant intended not only the act resulting in harm, but also intended the harm. Id. at 61. Because § 523(a)(6) covers intentional torts, the basic principle of tort law known as "substantial certainty" suffices to show intent,

Under that rule, an actor presumptively intends not only the initial conduct but all substantially certain results. Id.

To prove that an injury was malicious, the plaintiff must show that it was "wrongful and without just cause or excuse even in the absence of personal hatred, spite or ill will." The previous court need not have used the word "malicious" for collateral estoppel to apply. See Condict v. Condict (In re Condict), 71 B.R. 485, 488 (N.D. Ill. 1987) (denying discharge for "willfull, wanton, vexatious, and contemptuous conduct" on the basis of collateral estoppel, even though prior court never used the term "malicious").

To determine whether collateral estoppel bars litigation of whether Miriam caused a willful and malicious injury to Multiut, the court must examine the details of the state court proceeding. Multiut initially sued Yehuda, USG&E, Utilities, USGET, MDC and Multiut Electric in the Circuit Court of Cook County. The court later allowed Multiut to amend the complaint to add Miriam as a defendant. Miriam owns all the stock of four of the defendant corporations: USG&E, USGET, MDC and Multiut Electric (which was formerly called SGG Diamond, Inc.). Yehuda's two sons appear to own the stock of Utilities.

The court found that Yehuda was an employee of Multiut who entered into competition with his employer, and then caused Multiut's customers to believe that Multiut Electric and USG&E were part of or affiliated with Multiut. It held Yehuda liable for breach of fiduciary duty to Multiut and breach of his contract with Multiut. The trial court specifically found that Yehuda "violated his fiduciary obligation as a key employee by competing on his own and through various alter ego identities; breached his contract of employment, and used the trade secrets of [Multiut]; to wit, his customer lists, knowledge of terms with each customer and

11

business plans and materials, down to the direct copying of [Multiut's] customer agreement for use by Utilities, for his own benefit." (Pl. Stmt. Ex. B, Op. at 11.) The court further found that, by usurping Multiut's business opportunities and deceiving many of Multiut's customers, he created a business for electrical auditing and the exploitation of power purchase options ("PPOs") through Multiut Electric and USGET to compete with Multiut. Yehuda also competed with Multiut's gas supply business through Utilities.

The court further found that Yehuda violated the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*, by "fully intending" to create confusion and in fact confusing Multiut's customers. The court also concluded that Yehuda tortiously interfered with Multiut's prospective business relationships by usurping Multiut's business plan, subverting a relationship he had developed on Multiut's behalf to create an electric energy business, and causing Multiut's customers to believe they were dealing with Multiut when they were really dealing with the defendant corporations that were not affiliated with Multiut. (Pl. Stmt. Ex. B, Op. at 14.)

The court held Yehuda directly liable for his breach of fiduciary duty and breach of his employment contract. It also found that Yehuda was the alter ego of all five corporate defendants and therefore personally liable for damages caused by them. (Pl. Stmt. Ex. B, Op. at 10.) The court awarded damages against Yehuda in the amount of $250,000 in compensatory damages on the counts of breach of fiduciary duty, the Illinois Trade Secrets Act, and breach of contract. It concluded that these damages were sufficient to compensate Multiut for the damages caused with respect all the counts on which it found for Multiut. The court also awarded Multiut $250,000 in punitive damages against Yehuda.

Regarding Miriam, the trial court concluded that she participated in a civil conspiracy with Yehuda. The court specifically found that "she acted in concert with Yehuda in knowingly perpetrating a scheme of identities which were used by him to wrongfully cause damage to the Plaintiff." (Pl. Stmt. Ex. B, Op. at 14.) And while the court found that Miriam's culpability did not rise nearly to Yehuda's level, it found that "she did, with a significant degree of consciousness, facilitate his conduct," and that she "clearly facilitated Yehuda's exploitation of his breach of fiduciary and contractual employee relationship with [Multiut]." (Id.) Miriam was held personally liable for $250,000 in compensatory damages. No punitive damages were awarded against her.

In affirming the trial court's judgment, the Illinois Appellate Court noted that civil conspiracy is an intentional tort that requires proof that Miriam knowingly and voluntarily participated in a scheme against Multiut. Multiut Corp. v. Draiman, 359 Ill. App. 3d 527 (5th Dist. 2005). It found that Multiut "presented direct evidence that the couple acted together to form companies, including one company with 'Multiut' in its name. Miriam's 'innocent spouse' defense is belied by her prior affiliation with Multiut, which began in 1989 when she was an IMA and continued when she assisted Yehuda in his work for Multiut." The court further held that "[t]he evidence established that Miriam understood and accepted the general objectives of the conspiratorial scheme. [It] conclude[d] that Multiut demonstrated by clear and convincing evidence that Yehuda and Miriam engaged in a civil conspiracy that enabled Yehuda to breach his contract with and his fiduciary duty to Multiut." Id. The Appellate Court also concluded that the corporations were alter egos of Miriam because she participated in forming them, owned

13

shares in them, kept informed of their operations through her husband, but could produce no minutes, resolutions, or tax returns. Id.

Thus, the Illinois courts have conclusively determined that Miriam and Yehuda participated in a civil conspiracy to breach Yehuda's fiduciary duty to and his employment contract with Multiut.[2] By finding that Miriam acted in concert with her husband in "knowingly perpetrating a scheme of identities," that she clearly facilitated Yehuda's exploitation of his breaches, and that she acted intentionally because she understood and accepted the objectives of the conspiracy (to steal business and money from Multiut), the Illinois courts have actually and necessarily decided the facts necessary to establish that Miriam had the requisite intent under § 523(a)(6). Based on the same factual findings, the court also concludes that Miriam's conduct was malicious because it was wrongful and without cause. See Barclays Am./Bus. Credit, Inc. v. Long (In re Long), 774 F.2d 875, 881 (8th Cir. 1985); Haemonetics Corp. v. Dupre (In re Dupre), 238 B.R. 224 (D. Mass. 1999), aff'd, 229 F.3d. 1133, 2000 WL 11640447, at *1 (1st Cir. 2000) (unpublished table decision) (holding wife who knowingly participated in conversion of funds embezzled by husband liable for willful and malicious injury under §523(a)(6)). Thus, collateral estoppel applies to establish the first element of § 523(a)(6).

---

[2] Under Illinois law, a civil conspiracy requires proof of three elements: (1) a combination of two or more persons (2) for the purpose of accomplishing, through concerted action, (3) either an illegal object or a legal object through illegal means. Rodgers v. Peoples Gas Light & Coke Co., 315 Ill. App. 340, 350 (1st Dist. 2000)

### B. By the Debtor

The prior judgments also establish the second element of § 523(a)(6), that the injury was "by the debtor." As a member of the conspiracy to harm Multiut, Miriam is vicariously liable for the acts of her co-conspirator, Yehuda. Under Pinkerton v. United States, 328 U.S. 640 (1946), the law imputes to her all of his acts taken in furtherance of the scheme, regardless of her subjective intent or knowledge of their occurrence. The Circuit Court found that Miriam "acted in concert with her husband, Yehuda Draiman, in knowingly perpetrating a scheme of identities which were used by him to wrongfully cause damage to [Multiut]" and "clearly facilitated Yehuda's exploitation of his breach of his fiduciary and contractual employee relationship with [Multiut.]" Because those breaches of duty were within the scope of and in furtherance of the conspiracy, the law imputes liability for his conduct to her. See In re Markarian, 228 B.R. 34, 39 (B.A.P. 1st Cir. 1998) (holding a conspirator's debt nondischargeable under § 523(a)(2)(A) based on co-conspirator's fraudulent conduct); Fed. Deposit Ins. Corp. v. Smith (In re Smith), 160 B.R. 549, 552–55 (N.D. Tex. 1993) (holding a co-conspirator liable under § 523(a)(6) even though his conduct was not an independent tort). Therefore, collateral estoppel applies with respect to the second element of § 523(a)(6).

### C. To the Property of Another Entity

Under § 523(a)(6), the willful and malicious injury must be to the property of another. "Property" includes both tangible and intangible property. BPS Guard Servs. v. Myrick (In re Myrick), 172 B.R. 633, 637 (Bankr. D. Neb. 1994) (holding that damages for intentional interference with business relations and misappropriation of goodwill would be nondischargeable if plaintiff proved malice). The Circuit Court assessed damages against

15

Miriam in two components: (1) payments to Utilities derived from a customer Multiut originally contracted with; and (2) electric auditing and PPO business from customers Multiut previously billed, collected from and distributed to. These were the identical damages the court assessed against Yehuda in the counts dealing with his breach of fiduciary and contractual duties. These damages were caused by the conspiracy and fall within the broad definition of "property" under § 523(a)(6). Therefore, collateral estoppel applies to the third element of § 523(a)(6) as well.

Having determined that Miriam willfully and maliciously caused injury to Multiut's property, the court must decide which components of the judgment are nondischargeable. The general rule is that the nature of the act determines dischargeability. "All liabilities resulting [from a willful and malicious act] are nondischargeable." Britton v. Price (In re Britton), 950 F.2d 602, 606 (9th Cir. 1991) (holding actual and punitive damages for willful and malicious act nondischargeable). Therefore, the entire judgment and award of attorneys' fees are both nondischargeable as a matter of law.

## V.    Involuntary Judgments—§ 523(a)(6)

Multiut and Nachshon also seek summary judgment on Count V and Count I of their complaints respectively. Both counts seek to hold Miriam personally liable for the judgments entered against two corporations she owned (MDC and USG&E) that were petitioning creditors in the involuntary petitions filed against Multiut and Nachshon. The Multiut Involuntary Judgment comprises $400,000 in compensatory damages, $25,000 in attorneys' fees, and $450,000 in punitive damages. The Nachshon Involuntary Judgment comprises $25,000 in attorney's fees and $450,000 in punitive damages. To prevail on these counts, Multiut and

Nachshon must demonstrate both that the corporate veil should be pierced and that the filing of the involuntary petitions fall with the § 523(a)(6) exception to discharge for willful and malicious injury.

Piercing the corporate veil is an equitable remedy under which shareholders of a corporation are held liable for the corporation's debts. Tilley v. Shippee, 12 Ill. 2d 616, 623 (1958) (cited in In re Rehab. of Centaur Ins. Co., 238 Ill. App. 3d 292, 296 (1992)). The plaintiff must prove two elements: a unity of interest and ownership between the corporation and the shareholder, and the promotion of fraud or injustice if the veil is not pierced. As an equitable remedy, rather than a freestanding cause of action, piercing the corporate veil depends heavily on the facts and circumstances of the case. Due to the multitude of equitable factors to be considered and weighed, summary judgment is not often granted on veil piercing claims.

With no citation to cases and very little argument, Multiut and Nachshon simply state that Miriam admitted that she authorized the filing of the involuntary case by her two corporations in 2004 and that equity dictates that the veil be pierced. This is insufficient to establish that the court should pierce the corporate veil with respect to the Multiut Involuntary Judgment and the Nachshon Involuntary Judgment. While Multiut argues that collateral estoppel applies to its veil-piercing theory in Count II with respect to the State Court Judgment, it makes no specific argument that collateral estoppel applies to this count. Even if it did, while collateral estoppel could apply regarding specific factual findings made by the state court in 2001, it would not be sufficient to hold Miriam personally liable for corporate debts based on acts taken three years after the 2001 State Court Judgment. Multiut and Nachshon have presented no evidence covering the years after the State Court Judgment was entered other than

17

that Miriam authorized the two corporations to be petitioning creditors. Taking all inferences in favor of Miriam, as the court must, this fact alone is not sufficient to entitle Multiut and Nachshon to judgment as a matter of law on this issue. Therefore, the court need not consider whether the debt is one for willful and malicious injury, because Multiut and Nachshon have not shown that Miriam should be held liable for the debt.

## VI.    Other Counts

Multiut also seeks summary judgment with respect to Count I, in which it alleges that the State Court Judgment against Miriam is nondischargeable based on the fraud exception in 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) provides that debts are not dischargeable if they are for money obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The Seventh Circuit has adopted a single test to prove all three types of fraudulent conduct. The creditor must show that

> (1) the debtor obtained funds through false pretenses or representations which the debtor knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation;
>
> (2) the debtor possessed the intent to deceive; and
>
> (3) the creditor justifiably relied on the misrepresentation to its detriment.

Mayer v. Spanel Int'l, Ltd. (In re Mayer), 51 F.3d 670, 674–76 (7th Cir. 1995).

In this case, while Yehuda undoubtedly engaged in various types of fraudulent conduct, and Miriam conspired with him in his schemes, the specific findings in the State Court Judgment do not fit neatly into the requirements of § 523(a)(2)(A). For example, it requires the creditor to

justifiably rely on the misrepresentations. Here, Yehuda induced third parties to makes checks payable to or otherwise conduct business with entities he controlled, so the party who relied on his misrepresentations was someone other than Multiut. While some of Yehuda's actions consisted of misleading Multiut's own employees into depositing checks into accounts of Miriam's corporations, there is no need to determine which part of the damages imposed upon Miriam fit within § 523(a)(2)(A) because the court has already concluded that the entire State Court Judgment is nondischargeable under § 523(a)(6).

Similarly, Multiut seeks a finding in Count II that the State Court Judgment against Miriam's three corporations (USG&E, USGET and MDC) are nondischargeable under § 523(a)(2)(A) and that the corporate veil should be pierced so that she will be held personally liable for the judgments entered against the corporations. However, the judgments entered against these three corporations are for the same damages for which the state court held Miriam personally liable. Since the court has already concluded that the entire $1,252,046 is nondischargeable against Miriam personally, the court need not decide whether to pierce the corporate veil or whether any of the corporation's actions fall within the scope of § 523(a)(2)(A).

Finally, Multiut seeks a determination in Count III that the State Court Judgment against Miriam is nondischargeable under § 523(a)(4) because Miriam conspired with Yehuda to embezzle from Multiut. As the court concludes in its Memorandum Opinion entering summary judgment against Yehuda, his actions do not all fit within the scope of embezzlement under § 523(a)(4). Multiut Corp. v. Draiman, No. 06 AP 466, slip op. at 14–15 (Bankr. N.D. Ill. June 22, 2006). Since the court has already held Miriam personally liable for a

nondischargeable debt in the full amount of the judgment entered against her, it need not analyze other theories under § 523(a)(4).

### VII. Conclusion

For all the reasons stated above, the court will grant summary judgment with respect to Count V in favor of Multiut, and will enter a judgment finding that the $1,252,046 State Court Judgment entered against Miriam is nondischargeable. The court will deny the remainder of Multiut's motion for summary judgment. Nachshon's motion is denied.

Dated: June 22, 2006

CAROL A. DOYLE
United States Bankruptcy Judge